UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CAMILIA T. TERRY, | : | Case No. 3:24-cv-176 |
| Plaintiff, | : | |
| vs. | : | Judge Michael J. Newman |
| | : | Magistrate Judge Stephanie K. Bowman |
| M. ALLEN, U.M.A. DAYTON CORRECTIONAL, *et al*., | : | |
| Defendants. | : | |

### REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Dayton Correctional Institution ("DCI"), brings this pro se civil rights action pursuant to 42 U.S.C. § 1983, seeking relief for alleged constitutional violations. By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 8). This matter is before the Court for consideration of Plaintiff's Motion and Memorandum Seeking Class Certification (Doc. 3) and for an initial screening of the Amended Complaint (Doc. 7). Also before the Court is a Motion to Dismiss filed by the State of Ohio as an interest party on behalf of all putative defendants. (Doc. 11).

For the reasons set forth below, the Undersigned **RECOMMENDS** that the Court **DENY** plaintiff's Motion Seeking Class Certification, (Doc. 3). Further, the Undersigned **RECOMMENDS** that all of plaintiff's claims be dismissed for failure to state a claim.

**I.    Background**

Plaintiff is an inmate at DCI, which is operated by the Ohio Department of Rehabilitation and Corrections. ("ODRC). On June 17, 2024, she initiated the instant action against several prison employees alleging violations of her constitutional rights. (Doc. 1-2). On July 1, 2024,

and because plaintiff's lengthy initial Complaint violated Fed. R. Civ. P. 8(a), which requires a complaint to contain a "short and plain statement of the claim," the Undersigned issued a Deficiency Order, directing plaintiff to file an Amended Complaint conforming with Rule 8(a). (Doc. 5). The Undersigned directed plaintiff to set forth in clear, short, and concise terms the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each claim. (*Id*. at PAGEID # 228-29). The Undersigned cautioned plaintiff that some of her claims appeared subject to dismissal as a matter of law due to the statute of limitations because the claims described events occurring in 2014 through 2021, and some claims alleged violations of state or prison policy that are insufficient to state a claim under § 1983. (*Id*. at PAGEID # 229).

On July 30, 2024, and in response to the Court's Deficiency Order, plaintiff filed a thirteen-page Amended Complaint. (Doc. 7). As defendants, plaintiff names N. Grant, R. Battles, M. Allen, and Mark Foreman – who all appear to have been employees of DCI at the times relevant to the claims brought against them, as well as Annette Chambers-Smith, Director of ODRC, and John/Jane Doe, unnamed supervisory staff at DCI. All defendants are sued in their individual capacities. (*Id*. at PAGEID # 234).

On September 9, 2024, the State of Ohio, as an interested party on behalf of all putative Defendants, filed a motion to dismiss the Amended Complaint on the basis that it is frivolous, malicious, and/or fails to state a claim upon which relief may be granted. (Doc. 11). Plaintiff did not file a response.

## II. The Motion to Certify as Class Action (Doc. 3)

Plaintiff characterizes this case as a class action and seeks to challenge the practice of random cell assignments and hazardous living conditions on behalf of every inmate ever housed

at DCI from 2017 thorough 2024. (Doc. 3, at PAGEID # 215, 220-21). Her allegations are conclusory in nature and to the extent plaintiff seeks to formally be named a class representative, her request should be denied.

Plaintiff asserts that she is "well aware of the rights of prisoners as a whole and ha[s] adequate knowledge and wisdom of the laws surrounding civil rights to be able to effectively partner with counsel who has the legal credentials." (*Id*. at PAGEID # 223). But the Undersigned notes that:

> Federal Rule of Civil Procedure 23(a)(4) generally does not permit pro se plaintiffs without legal training to serve as class representatives. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (holding that pro se litigants are "inadequate class representatives"); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (holding that "[p]ro se prisoners generally may not bring class action lawsuits concerning prison conditions"). [Plaintiff], who is incarcerated and lacks legal training, has not attempted to establish that he would be an adequate class representative, either in his motion for class certification or on appeal. Because [Plaintiff] has offered no basis for departing from the general rule that pro se plaintiffs are not adequate class representatives, the district court did not abuse its discretion by denying class certification.

*Sanders v. Macauley*, No. 22-1502, 2022 WL 16729580, at *5 (6th Cir. Aug. 10, 2022).

Although plaintiff states she can adequately represent the proposed class, she has also acknowledged – in her prior motion to appoint counsel – that she lacks "legal experience" and "legal credentials" and has "no formal legal training outside of . . . self education." (Doc. 2, at PAGEID # 208, 210). Simply put, plaintiff presents no basis for departing from the general rule that pro se plaintiffs are inadequate class representatives, and the Undersigned **RECOMMENDS** that the Court **DENY** the motion to certify a class action. (Doc. 3).

3

### III. Screening of the Amended Complaint

#### A. Legal Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(2)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> * * *
>
> (B) the action or appeal –
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Federal Rule of Civil

---

[1] Formerly 28 U.S.C. § 1915(d).

Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

5

**B. State of Ohio's Interested Party Motion to Dismiss**

Here, the State of Ohio, as an interested party, has filed a motion to dismiss on the basis that the Amended Complaint is frivolous, malicious, and fails to state a claim upon which relief may be granted. (Doc. 11). The State of Ohio has filed the motion to dismiss pursuant to Sections 1915(e)(2)(B) and 1915A(a)-(b), the screening provisions of the Prison Litigation Reform Act. Thus, the motion is, in effect, a motion for the Court to conduct an initial screening of the Amended Complaint. Plaintiff did not file a response to the motion to dismiss and her time to do so has elapsed.

The obligation to dismiss a complaint under the PLRA screening provisions is not excused even after a motion to dismiss is filed, and if there is a ground for dismissal not relied upon by a defendant in a motion to dismiss, the court may *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. *See Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 589 (W.D. Pa. 2008) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000)). That is, plaintiff's claims are subject to *sua sponte* screening for dismissal regardless of the pending motion to dismiss.

Because the Undersigned agrees that plaintiff's Amended Complaint should be dismissed upon the initial screen as frivolous, malicious or failing to state a claim upon which relief may be granted, the Undersigned **RECOMMENDS** that the motion to dismiss, (Doc. 11), be **GRANTED**.

**C. Allegations in the Amended Complaint**

Plaintiff brings this action raising claims of deliberate indifference to her safety based on cellmate assignments, retaliation for utilizing prison grievance procedures, and discrimination and denial of equal protection on the basis of her sexual orientation (particularly in connection

with visitation). (Doc. 7, at PAGEID # 241-244; ¶¶ 69-79). Plaintiff also seeks to challenge DCI's denial of privileges afforded to inmates at other ODRC facilities (specifically Ohio Reformatory for Women in Marysville). (*Id*. at PAGEID # 244, ¶ 77).

The allegations in plaintiff's Amended Complaint span a time frame from at least early 2021 through 2024, and the general factual basis underlying the first half of the Amended Complaint (Doc. 7, at PAGEID # 235-238, ¶¶ 9-42) was set forth in a prior civil rights action dismissed by this Court. *See Terry v. Crawford*, Case No. 3:21cv35 (S.D. Ohio) (Newman, D.J.) (summary judgment granted in favor of defendants as to plaintiff's federal claims on March 18, 2024, Docs. 102-103). Regarding those facts, plaintiff alleges that in August 2021, she was forced to share a cell with a cellmate who made physical threats against her, DCI staff (Grant, Allen and Foreman) ignored those threats, and plaintiff suffered an injury as a result of a physical altercation initiated by the threatening cellmate. (Doc. 7, at PAGEID # 235-236). Plaintiff was issued a conduct report for fighting and destruction of property and she was sentenced to twenty-one days in the TPU. (*Id*. at PAGEID # 236-37.) Plaintiff asserts that defendant Battles denied her due process in connection with the disciplinary hearing resulting from the incident, which began on August 12, 2021. (*Id*.). Plaintiff further alleges that once she was released from TPU, she requested that defendants Allen and Foreman separate her from the ex-cellmate. (*Id*. at PAGEID # 237). After an unspecified period of separation, the ex-cellmate was moved back into the same unit as plaintiff. (*Id*. at PAGEID # 237-238).

The Amended Complaint then skips ahead to April 2024. Plaintiff alleges she reported defendant Allen for "showing unequal treatment" towards plaintiff and her same-sex partner regarding visitation. (*Id*. at PAGEID # 238, ¶ 45). Plaintiff contends defendant Allen retaliated against her for filing this report by assigning the best friend of plaintiff's prior cellmate to be

7

plaintiff's new cellmate.  (*Id*. at ¶ 44).  Plaintiff alleges this cellmate "immediately began causing [her] issues." (*Id*.)  Next, plaintiff was housed with a cellmate who had "hygienic issues" and who later threatened to stab plaintiff.  (*Id*. at PAGEID # 239,  ¶¶ 46-47).  Plaintiff asserts she was not moved immediately after these threats.  When she was moved, plaintiff was placed with "sever[ely] mentally ill persons displaying predatory actions towards [her], unclean persons, larger in size persons, known unusually violent persons, or racist prejudice persons who picked fights due to [her] crime, sexual orientation, or [race]." (*Id*. at ¶ 48)

The Amended Complaint then steps back to June of 2022, wherein she alleges that defendant Allen identified same-sex couples including plaintiff and her formerly locked up partner, as well as six other individuals.  Plaintiff seems to suggest that defendant Allen separated the individuals she identified as being in a relationship, forcing them to meet in the prison yard.  (*Id*. at PAGEID # 239-40, ¶¶ 49-54).  Plaintiff alleges that she and her partner were "openly targeted" by yard staff and issued false conduct reports.  (*Id*.)  Plaintiff states the "retaliatory harassments" increased and on October 4, 2022, defendant Battles found plaintiff guilty of "false allegations" in a conduct report.  (*Id*. at ¶ 54).

Plaintiff next alleges that on March 1st of what the Court believes to be 2024, her partner, who was released from custody, sent a visitation request that was denied by defendant Allen.  (*Id*. at PAGEID # 240, at ¶ 55-60; Doc. 7-2, at PAGEID # 250).  When plaintiff asked defendant Allen when her partner could reapply for visitation, defendant Allen stated that she was not required to give plaintiff a time frame for when her partner could reapply, even though individuals who did not have same sex partners were told their partners could reapply after six months.  (Doc. 7, at PAGEID # 240, ¶ 55-60).  Plaintiff alleges that defendant Allen continually

8

added new reasons for the denial of visitation and imposed additional requirements, such as the approval of her partner's parole officer, which was obtained. (*Id*.)

Finally, plaintiff alleges that lower level inmates at DCI are treated more harshly with respect to restrictions and privileges than inmates housed in other ODRC facilities, specifically the Ohio Reformatory for Women in Marysville, Ohio ("ORW"). (*Id*. at PAGEID # 240-41, ¶ 61-68). Plaintiff states that defendant Allen has denied her a "level decrease" while awarding decreases to other level three prisoners, (*Id*. at ¶ 67), and that defendant Allen "operates as the warden and is in control over every department, and makes all the decisions in such classification, visitation, mental health, cell moves, jobs, [and] recreation . . . ." (*Id*. at ¶ 68).

The Undersigned notes that in the Amended Complaint, plaintiff states that all defendants are sued in their individual capacity, but plaintiff fails to specify the relief she seeks. In her initial complaint which is no longer the operative pleading, plaintiff sought compensatory and punitive damages, injunctive relief, and implementation of appropriate policies and procedures responsive to her claims for relief. (Doc. 1-2, at PAGEID # 126-28).

**D. Analysis of the Complaint**

The Amended Complaint is at times hard to follow, and it is not always clear what factual allegations pertain to the various claims for relief that plaintiff attempts to set forth in paragraphs 69 through 79 of the Amended Complaint.

1. *Defendants Chambers-Smith and John/Jane Doe*

The Undersigned **RECOMMENDS** the complaint be **dismissed** against defendants Annette Chambers-Smith, director of ODRC, and John/Jane Doe (presently unknown DCI supervisory staff). Although these defendants are listed as defendants in the Amended Complaint (Doc. 7, at PAGEID # 234), plaintiff makes only conclusory allegations against these

9

defendants, and the Amended Complaint does not include specific factual allegations showing their personal involvement in any of plaintiff's claims for relief. Absent specific allegations of wrongdoing, plaintiff has failed to state a claim upon which relief may be granted against these defendants.

It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010). Plaintiff fails to allege facts suggesting that defendants Chambers-Smith and/or John/Jane Doe directly participated in and/or authorized, approved or acquiesced in the alleged violations of her constitutional rights. The mere fact that these defendants hold supervisory positions is not enough to impose liability on them under § 1983.

It is therefore **RECOMMENDED** that all claims against these defendants be **DISMISSED**.

> 2. *August 2021 claims of deliberate indifference to safety, retaliation and denial of due process*

Plaintiff's claims of deliberate indifference to her safety, retaliation and denial of due process, set forth in paragraphs 69 through 72 of the Amended Complaint (which correspond to the facts alleged in paragraphs 9 through 42), must be dismissed for several reasons.

First, plaintiff's claims are duplicative of claims raised in her prior § 1983 case, wherein she challenged many of these same August 2021 cellmate threats and issues. *See Terry v. Crawford*, Case No. 3:21cv35 (S.D. Ohio). Although defendant Allen was not a party to the prior case, plaintiff alleged a claim of retaliation against defendant Foreman based on his refusal to move plaintiff when she was being threatened by her cellmate. This Court granted summary judgment in favor of Foreman, finding that plaintiff failed to show a causal connection between her informal complaints and use of the prison grievance system and Foreman's refusal to move her to a different cell after she was threatened. *Terry*, Case No. 3:21cv35, Doc. 102 at PAGEID # 2388 (S.D. Ohio Mar. 18, 2024). The Court also noted "the record shows that there were other reasons why Plaintiff may have been refused a cell change: she had a ticket when DCI policy required her to be ticket-free for six months before she could request a move." *Id*.

"A complaint is duplicative and subject to dismissal if the claims, parties and available relief do not significantly differ from an earlier-filed action." *Cummings v. Mason*, No. 1:11-cv-649, 2011 WL 2745937, at *2 (W.D. Mich. July 13, 2011) (citing *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)). Duplicative, however, does not mean identical. Although the claims may not "significantly differ" from one another, the focus is on "the substance of the complaint." *Id.* (citing *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (holding that a complaint was duplicative although different defendants were named because it "repeat[ed] the same factual allegations" asserted in the earlier case)). Here, the instant claims set forth in paragraphs 69 through 72 are duplicative of claims raised and dismissed in the earlier case. The claims in each case stem from defendants' alleged disregard of cellmate threats and alleged retaliation against plaintiff, as well as alleged defects in disciplinary proceedings, that occurred during and prior to August 2021. The threats involved in both cases, the failure to change

plaintiff's cellmate assignment, and the alleged retaliatory conduct reports appear one and the same. Accordingly, plaintiff's claims should be dismissed pursuant to under 28 U.S.C. § 1915(e)(2) as "frivolous or malicious." *Smith v. City of Detroit*, No. 12-cv-14278, 2012 WL 7830033, at *3 (E.D. Mich. Oct. 31, 2012) (citing *McWilliams v. State of Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) (holding "that repetitious litigation of virtually identical causes of action may be dismissed under the in forma pauperis statute as frivolous or malicious")).

Alternatively, the claims set forth in paragraphs 69-72 are barred by res judicata or claim preclusion. The doctrine of res judicata provides that a final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same cause of action. *See, e.g., Smith v. Morgan,* 75 F. App'x 505, 506 (6th Cir. 2003). The doctrine not only bars relitigation in a second suit of what was actually litigated in the first suit, but res judicata also bars relitigation *of what could have been litigated* in the first suit. *Id.* at 506 ("Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented."). To that end, courts must focus upon "whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." *United States v. Athlone Indus.,* 746 F.2d 977, 984 (3d Cir. 1984). A mere difference in the theory of recovery is not dispositive. *Id*.

Plaintiff's claims set forth in paragraphs 69-72 for failure to protect, deliberate indifference, retaliation and violation of due process are sufficiently similar to the prior case to be barred by the doctrine of res judicata and, as such, the claims fail to state a claim upon which

12

relief may be granted. The Undersigned **RECOMMENDS** that the claims be **DISMISSED WITH PREJUDICE**.

Finally, the statute of limitations governing plaintiff's § 1983 claims is two years. *See Norman v. Granson*, No. 18-4232, 2020 WL 3240900, at *2 (6th Cir. Mar. 25, 2020) (citing *Browning v. Pendleton*, 869 F.2d 989, 990-92 (6th Cir. 1989) (Ohio's two year statute of limitations for bodily injury applies to § 1983 claims)); *LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (same). In the § 1983 context, the Sixth Circuit has adopted the discovery rule, which considers a plaintiff to have a complete and present cause of action "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)).

Here, plaintiff commenced the instant action on June 17, 2024. But she alleges that defendants failed to protect her from an assault that occurred on August 3, 2021, and she challenges the handling of a disciplinary hearing and appeal that occurred between August 10, 2021 and August 19, 2021. Any alleged acts or violations of plaintiff's rights occurring prior to June 17, 2022, are beyond the two-year statute of limitations where, as here, plaintiff had reason to know about the alleged violations at the time they allegedly occurred. Thus, the Undersigned **RECOMMENDS** that all claims based on conduct that occurred prior to June 17, 2022, should be **DISMISSED WITH PREJUDICE** as time barred. *See Norman*, 2020 WL 3240900, at *2 ("Where a statute of limitations defect is obvious from the face of the complaint, sua sponte dismissal is appropriate."); *see also Alston v. Tenn. Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) (same) (citing *Pino v. Ryan,* 49 F.3d 51, 53–54 (2d Cir. 1995)); *Bell v. Rowe*, 178 F.3d 1293 (6th Cir. 1999) (Table) ("Where a particular claim is barred by the applicable statute

of limitations, it does not present an arguable or rational basis in law and therefore may be dismissed as frivolous under § 1915(e).") (citation omitted).

       3. *Plaintiff's other claims for retaliation should also be dismissed*

Plaintiff's retaliation claims against the named defendants in paragraph 73 and 76 should be dismissed. In those paragraphs, plaintiff attempts to assert a First Amendment claim of retaliation due to defendants (particularly defendant Allen) assigning plaintiff "incompatible cellmates for retaliatory purposes" after plaintiff exercised her right to grievance procedures, and that defendant Allen targeted "unidentified, and identified gays labeling them to be in same sex relationships and using that motivation to separate to different housing units after no rule violations were found." (Doc. 7, at PAGEID # 243, ¶ 73). Plaintiff fails to provide any plausible factual basis to support these claims.

A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x. 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse action. *Id*. (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394).

In this case, plaintiff's conclusory retaliation claims are subject to dismissal because plaintiff has not alleged facts suggesting a causal connection between the alleged adverse actions and the protected activity. In essence, plaintiff claims that every action taken by the named defendants was a form of retaliation undertaken in response to her past history of filing

14

grievances or exhausting administrative remedies. However, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). This is because "not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient")).

In the Amended Complaint, plaintiff offers only conclusory allegations that defendants were motivated by her grievance history. Without any further factual enhancement, plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *See also Whiteside v. Collins,* No. Civ.A. 2:08-cv-875, 2009 WL 4281443, at *9 (S.D. Ohio Nov. 24, 2009) (finding plaintiff's retaliation claim subject to dismissal and noting that "conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim") (Report and Recommendation), *adopted*, 2010 WL 1032424 (S.D. Ohio Mar. 17, 2010). Further, it is well settled that cell and cellmate assignments "are a normal part of prison life" that "typically do not amount to an adverse action." *LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013).

Finally, to the extent plaintiff alleges she was retaliated against and targeted on the basis of her sexual orientation through unjustified confiscation of her property and fabricated conduct reports while at the prison yard, plaintiff fails to allege that any named defendant was personally responsible for these actions or personally involved in targeting plaintiff.

15

In sum, plaintiff has failed to state a claim upon which relief may be granted with respect to her First Amendment retaliation claims. Because plaintiff has failed to support her claims with non-conclusory allegations of a causal connection between the alleged adverse actions and First Amendment protected conduct, or failed to allege adverse action that would deter a person of ordinary firmness from engaging in protected conduct, her retaliation claims should be dismissed. To the extent plaintiff also attempts to throw in a claim of deliberate indifference to her safety based on retaliatory cell moves in paragraph 76, she has not alleged sufficient facts to state a claim for relief. For these reasons, the Undersigned **RECOMMENDS** that the claims set forth in paragraphs 73 and 76, for retaliation and potentially for deliberate indifference to her safety, be **DISMISSED** for failure to state a claim upon which relief may be granted.

*4. Plaintiff's claim challenging the policies of DCI regarding inmate privileges*

In paragraph 77, plaintiff argues that inmates at DCI do not receive the same privileges as inmates at other institutions, specifically the ORW in Marysville. It appears Plaintiff is attempting to bring this claim on behalf of all inmates characterized as levels 1 through 3 and who are subject to "additional restrictions" than inmates "who are similarly situated in levels, and sentences" at Marysville.

To the extent Plaintiff seeks to assert claims on behalf of other inmates outside the context of a class action, she is unable to do so. *See Williams-Bey v. Smith*, No. 1:20cv828, 2020 WL 1954140, at *1 (N.D. Ohio Apr. 23, 2020) ("[T]o the extent the Plaintiff purports to represent a class or anyone other than himself, his Complaint must be dismissed."); *Marcum v. Jones*, No. 1:06cv 108, 2006 WL 543714, at *1 (S.D. Ohio Mar. 3, 2006) (and cases cited therein) (holding that a pro se inmate "may bring his own claims to federal court without counsel, but not the claims of others"). *See also Garrison v. Michigan Dep't of Corr.*, 333 F.

16

App'x 914, 919 (6th Cir. 2009) ("[A] pro se litigant may represent himself on his own claims, but [he] may not act in a representative capacity," or represent a class of inmates in class action litigation). Plaintiff's claims must be "limited to alleged violations of h[er] own constitutional rights." *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008).

Here, plaintiff has not attempted to show how any difference in privileges afforded prisoners at another institution has resulted in a violation of her own constitutional rights. For this reason, the Undersigned **RECOMMENDS** that the claim set forth in paragraph 77 of the Amended Complaint be **DISMISSED**.

    5. *Plaintiff's discrimination claims on the basis of her sexual orientation*

In paragraph 75 of the Amended Complaint, plaintiff alleges what appears to be an equal protection claim on the basis that defendant Allen discriminated against her due to her sexual orientation by denying a request for visitation with her previously incarcerated same sex partner. (Doc. 7, at PAGEID # 243). The factual basis for this claim is set forth in paragraphs 55 through 60 of the Amended Complaint, wherein plaintiff alleges that she was treated differently than other similarly situated prisoners who sought visitation with previously incarcerated male partners. (*Id.* at PAGEID # 240). Plaintiff seems to acknowledge that visitation requests for these previously incarcerated male visitors were also denied, but she alleges that in those cases, the potential male visitors could reapply for visitation after a period of six months. In her case, defendant Allen refused to provide a timeline for when her same sex partner could reapply. (*Id.*) Plaintiff filed certain documents as attachments to her Amended Complaint, including kite transcripts pertaining to this claim. (Doc. 7-2, at PAGEID # 250-269).

In the motion to dismiss, the State of Ohio, as an interested party, argues that plaintiff's equal protection claim should not proceed against defendant Allen, because she was not the

17

decision maker. (Doc. 11, at PAGEID # 293-94). According to the State, the "visitation application was submitted to Ms. Lee rather than to putative defendant Allen" and the Amended Complaint "sets forth no facts suggesting that putative defendant Allen rather than Ms. Lee disapproved the application at issue." (*Id.*) In support of this argument, the State cites to the attachments plaintiff submitted with her Amended Complaint, and to Doc. 7-2 at PAGEID # 253 specifically, wherein plaintiff states in a kite to defendant Allen that "[a] visitation application was submitted to Ms. Lee and then it was sent to you . . . ." (Doc. 7-2, at PAGEID # 253).

The Undersigned notes that plaintiff included a copy of the application denial as part of her attachments to the Amended Complaint, and the denial states: "The visiting application from Juana Cabbell has been received; however it is DENIED at this time by Ms. Allen (UMG) for the following reasons: DCI former IP, due to poor institutional record." (*Id*. at PAGEID # 250). And on an initial screen, this Court must accept the facts in plaintiff's complaint as true and construe all reasonable inferences in her favor. For purposes of this screen, plaintiff has sufficiently alleged that defendant Allen was the relevant decision maker with respect to the denial of the visitation application.

But this claim should not proceed for a different reason. "[T]he appropriate focus in this constitutional equal protection claim is determination of whether the pleadings allege that Plaintiff was subjected to invidious discrimination based on her membership in an identifiable group." *Yerkes v. Ohio State Hwy. Patrol*, 455 F. Supp. 3d 523, 536 (S.D. Ohio 2020) (Sargus, D.J.). Here, plaintiff has plausibly alleged that she is a member of an identifiable group. *Id*. at 540 ("The law from the United States Supreme Court and the Sixth Circuit has been clearly established for decades that 'homosexuals do constitute an 'identifiable group' for equal protection purposes.'") (quoting *Davis v. Prison Health Services*, 679 F.3d 433, 441-42 (6th Cir.

2012)). What plaintiff has not plausibly alleged is that any defendant treated her less favorably and/or subjected her to discrimination of the basis of her sexual orientation. Plaintiff acknowledges that other similarly situated inmates who sought visitation with previously incarcerated male partners also had their visitation requests denied. (Doc. 7, at PAGEID # 240, ¶ 56). The crux of plaintiff's complaint is that defendant Allen informed those prisoners that their previously incarcerated male partners could reapply for visitation in six months, but she was not given an express timeline for reapplication. (*Id*. at ¶ 57). This is insufficient to state a claim for discrimination in violation of equal protection. There is no basis from which the Undersigned can infer that the lack of a specified time frame for reapplication states a claim for discrimination on the basis of plaintiff's sexual orientation. For this reason, the Undersigned **RECOMMENDS** that plaintiff's equal protection claim, as set forth in paragraph 75, be **DISMISSED** for failure to state a claim upon which relief may be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's motion to certify a class action (Doc. 3) be **DENIED**.

2. All of plaintiff's claims for relief in the Amended Complaint be **DISMISSED** as Frivolous, malicious or for failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915A and 1915(e).

3. The State of Ohio's motion to dismiss (Doc. 11) be **GRANTED**.

## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely

motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

    **IT IS SO ORDERED.**

January 28, 2025                                                *s/Stephanie K. Bowman*
                                                                           STEPHANIE K. BOWMAN
                                                                           United States Magistrate Judge